Sigmund POLLACK, Plaintiff,

v.

CITY OF NEWARK, N. J., Frederick R. Lacey, John Owens, the name "John" being fictitious, and numerous other defendants whose names are unknown to plaintiff at this time, Defendants.

Civ. A. No. 658–55.

United States District Court
D. New Jersey.

Dec. 20, 1956.

Sigmund Pollack, pro se.

Vincent P. Torppey, by Thomas M. Kane, Newark, N. J., for defendants.

MODARELLI, District Judge.

This case presents a most unusual situation in that both plaintiff and defendants filed motions for summary judgment under Rule 56(c), Fed.Rules Civ.Proc. 28 U.S.C.

On July 25, 1955, plaintiff, a citizen and resident of the State of New York, filed in this court a complaint against defendants who are the City of Newark, N. J., Frederick R. Lacey, the Chief of Police of the City, "John" Owens, a police lieutenant of the City, "and numerous other defendants whose names are unknown to plaintiff." After eliminating the repetition and an irrelevant dissertation of the Constitution and duties of police officers, the complaint alleges that this action was brought against defendants for "conspiracy, fraud, duress, physical threats, and other criminal acts committed against plaintiff by defendants above named, who deprived plaintiff of his constitutional and civil rights and the equal protection of the laws; and for the substantive deprivation, denial and invasion thereof, all in violation of the United States Constitution, Amendment XIV, and Civil Rights Acts, Sections 1983 and 1985, 42 U.S.C."[1] Plaintiff appears pro se.

Plaintiff is editor and publisher of a "newspaper," "Truth Finder," published in New York City. He sets forth that on June 29, 1955, he was peacefully distributing circulars and soliciting contributions on Market Street, in the City of Newark. These circulars set forth his views on various matters, assertedly in the public interest. Sufficeth to say that the signs and circulars represented libellous, unrestrained, and venomous attacks

---

1. Section 1985 and its companion section 1983 give a right of action, sounding in tort, to every individual whose federal rights were trespassed upon by any officer acting under pretense of state law. Acts of 1861 and 1871.

upon distinguished public citizens, principally former Gov. Thomas E. Dewey, as well as upon the judicial branch of the United States Government and the State of New York. The highest judicial officer of this nation did not escape plaintiff's ridicule. A city patrolman advised plaintiff that he needed a permit to distribute the circulars and solicit contributions, and told him to apply to police headquarters to obtain one. At the police headquarters, officers read the signs he carried and the circulars. Officers made inquiries to Millerton, New York, plaintiff's home town, and New York City police to secure information about the plaintiff. Plaintiff insists that he was placed under arrest and makes various and diverse allegations of purported mistreatment that he received during the time he was at police headquarters, all of which are denied by defendants.

In his prolix and repetitive complaint, plaintiff has compiled a catalogue of legal terms in obvious ignorance of their meaning and application. These expressions include "conspiracy," "fraud," "duress," "coercion," "third degree," "cruel and inhuman criminal acts," and "illegal arrest, search and seizure." The tenor and substance of his complaint may best be appreciated by quoting representative paragraphs as follows:

"12. That the plaintiff was interrogated in no uncertain terms by defendant Owens, just like if he was a *criminal* of the worst type. Said defendant made all kinds of threatening remarks at plaintiff which are unheard of since the *Dark Ages*." Page 4.

"13. * * * Then said defendant [Owens] began asking plaintiff with all kinds of private and personal questions. Putting him through a regular *third degree*. That by the said criminal acts committed by said defendant, plaintiff was put into a *state of extreme fear,* and after while said defendant with his cruel way of treating plaintiff, was put through the *influence of fear* stages,

thereby mental coercion was employed by the defendant." Page 4.

"16. That defendants above named have not constitutional or statutory rights to their office to comit [commit] hereinbefore criminal acts. Membership in the police department is not a right, but a privilege; a privilege burdened with conditions. A fair and upright character is one of them. Compliance with the condition is essential at the moment of becoming a police officer; but is equally essential afterwards. Whenever the condition is broken, the privilege is lost. Furthermore, a police officer is a *public servant,* a guardian angel to citizens, not a persecutor using *gestapo* methods." Page 5.

"20. That the hereinbefore mentioned acts committed by defendants against plaintiff were designed solely for political purposes to impress and protect certain *political* figures." Page 6.

Plaintiff seeks the following relief: (1) a judgment of $75 for the circulars and two signs which defendants allegedly seized and have held; (2) a judgment for $300,000 as general and punitive damages for "unlawful interference by the remaining defendants with plaintiff's property."

On May 10, 1956, this court granted a summary judgment in favor of defendant City of Newark.

Defendants Frederick R. Lacey and John Owens have submitted affidavits in support of this motion, as has the plaintiff, Sigmund Pollack. In addition, there is also a deposition of the plaintiff, taken on behalf of the City of Newark, which was considered in disposing of the motions before the court.

Rule 56(c) provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." While an affidavit may not be used as a basis for deciding the fact issue, it may be considered for the purpose of ascertaining whether an issue of fact is presented. Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580; Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 1949, 176 F.2d 90.

Although the complaint alleges conspiracy, fraud, duress, physical threats, and other criminal acts committed against the plaintiff by the defendants, plaintiff makes contradictory denials of these allegations in his deposition. These contradictory denials appear from the following excerpts of his sworn statement:

"Q. When you left, you were friendly to Lieutenant Owens? A. I have nothing against Lieutenant Owens or against Chief of Police Lacey. As far as that is concerned, personally.

"Q. Do you have a complaint against anyone in Essex County? A. No.

"Q. Or in the State of New Jersey? A. Nothing, no.

"Q. Did Lieutenant Owens ever, at any time, threaten you with physical harm? A. No.

"Q. Did Lieutenant Owens, at any time, threaten you with incarceration? A. No.

"Q. Did Chief Lacey, at any time, threaten you with physical harm? A. No.

"Q. Or ever threaten you with incarceration? A. No.

"Q. Did they ever threaten you, in any manner? A. Yes.

"Q. Yes? A. Yes.

"Q. How did they threaten you? A. Well, they gave me the impression after Lieutenant Owens called the Chief of Police up of Millerton, New York, inquiring whether there is an indictment against me, or a warrant for my arrest, and that gave me an impression that I was under detention and arrest and it was worse than a physical threat.

"Q. And that is the basis for your allegation in your complaint, that they threatened you? A. Yes." (Transcript, pp. 25, 27, 29, and 30.)

Considering the complaint in a light most favorable to the movant-plaintiff, as the court must, the sole serious allegation found among a plethora of irrelevant, redundant, repetitious, and impertinent matter is that defendants by words and conduct gave plaintiff "an impression" that he was under arrest. The problem is not whether state law has been violated but whether the inhabitant of a state has been deprived of a federal right by one who acts under color of any state law. Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. We may resort to the requirements of state law to ascertain the essential elements of false arrest. The gist of false imprisonment is mere unlawful detention. Altana v. McCabe, Sup.Ct.1944, 132 N.J.L. 12, 38 A.2d 192. The detention must be without color of legal authority. Earl v. Winne, 1953, 14 N.J. 119, 101 A.2d 535. A public official may be held liable for false imprisonment where he has acted outside his authority. Collins v. Cody, Sup.Ct.1920, 95 N.J.L. 65, 113 A. 709; Lakutis v. Greenwood, 1952, 9 N.J. 101, 87 A.2d 23.

The plaintiff himself has deposed under oath that the patrolman on the street did not place him under arrest; that unaccompanied he voluntarily called at police headquarters; that he was not restrained in any way while at police headquarters; that he was never told that he was under arrest; that although he "was under the impression" that he was under arrest, he also admitted that he was merely detained until the purpose of his visit was disposed of, viz., to ascertain whether or not a permit or license was required.

It is elementary that detention is not synonymous with arrest. De-

tention must be without consent and without legal cause to constitute false arrest. Plaintiff, as noted, visited headquarters voluntarily. He was free to leave at will. He conceded that doors were open and that people were going in and out of the building within his view. That detectives were among those in the room, coming and going about their official duties, as is to be expected at a police headquarters. The presence of a policeman who questions the plaintiff, or the bare assertion that authority to arrest exists in the defendant, without purporting to exercise it by taking the plaintiff into custody, is not imprisonment, so long as no present restraint of liberty is to be implied. Also, there is no false imprisonment unless the defendant intends to cause a confinement. Restatement of the Law of Torts, § 35; Prosser on Torts, § 12. There was an absence of words or conduct which would induce a reasonable apprehension of force directed to the plaintiff. Russell v. Levinsohn, 1927, 138 A. 205, 5 N.J. Misc. 765. And where it is clear that there is no reasonable apprehension of force, there is no issue to go to a jury on the question of false arrest. Earl v. Winne, supra; Hebrew v. Pulis, 1906, 64 A. 121, 73 N.J.L. 621, 7 L.R.A.,N.S., 580.

I disregard as mere conclusions, the loose and general, the factually unsupported characterizations of the complaint of acts of the defendants as malicious, conspiratorial, and done for the purpose of depriving plaintiff of his constitutional rights. The things defendants are alleged to have done, as distinguished from the conclusions of the pleading with respect to them, do not constitute a deprivation of the civil rights of the plaintiff. Fully recognizing that conspiracies are rarely proved by direct evidence, nonetheless some evidence, however slight, must be offered of a fact from which a reasonably-minded person can draw an inference of the alleged conspiracy. Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899;

Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305. Here, not a scintilla of admissible proof has been submitted by plaintiff to controvert defendants' affidavits. The absence of facts is not cured by vituperativeness and the indiscriminate use of opprobrious adjectives. Neither is it cured by mere assertions unaccompanied by facts which would be admissible in evidence upon a trial.

Moreover in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence. Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 1945, 147 F.2d 399, certiorari denied 1945, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982; 6 Moore's Federal Practice, 2d Ed. (1955), p. 2061. The affidavit of defendant John P. Owens identifies and has attached thereto a signed copy of a letter of George M. Searle, Deputy Superintendent, Division of State Police, Albany, New York. This communication states that plaintiff "has turned up from time to time in an effort to harass the Division and some of its members, including the writer, and most recently in July 1953 he served a summons and complaint against certain members of the Division and approximately 50 others, including Governor Dewey and other well known persons in public life, entitled 'Pollack v. Aspbury, et al.' This matter was handled by the Attorney General, and Chief Justice [Judge] Knox wrote in the last paragraph of his decision: 'In addition, I wish to say that if the plaintiff should again file a pleading such as that now before me, I shall not hesitate to cite him for contempt of court.' "

The opinion referred to is Pollack v. Aspbury, D.C.S.D.N.Y.1953, 14 F.R.D. 454, 456, certiorari denied 1954, 348 U.S. 903, 75 S.Ct. 228, 99 L.Ed. 709, and 1955, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268. While the pleading before me differs in several respects from that which was before Judge Knox, there are also many points of similarity. Plain-

tiff's pleading is replete with irrelevant, redundant, vituperative, repetitious and impertinent matter. Likewise plaintiff's affidavit fails to meet the test of showing that a claim actually exists. So many of the statements set forth in plaintiff's affidavit are subject to the serious infirmities of being irrelevant and immaterial that their value is nil. Illustrative of the deficiencies referred to, mirroring the complaint, are the following:

"From the complaint this court can judge the real motive behind defendants acts. It was not the enforcement of Law and Order, plaintiff has committed no crime they knew that. The sole purpose was the advancement the political fortunes of their friends. A policeman is supposed to be *'neutral'* when it comes to politics. Not so with defendants Lacey and Owens who are nothing but a confirmed aganets [agents]. * * *.

"We don't have to go to Communist China to get cruel, unmerciful treatment, it is being done right here by defendants Lacey and Owens.

"Defendants should not be allowed the protection of the Constitution which they are trying to wreck. It ks [it is] plaintiff's devotion to the principles upon which this nation rests, *justice—freedom*, and *fairness*, which is not defendants way of life. * * * They ars [are] the advance agents of their political henchmen, and cronies."

Such statements would not be competent evidence. While a serious question arises as to the good faith of plaintiff's pleading, making it subject to be stricken as sham on motion of the court, this opinion is addressed to the motions before the court. I am constrained to conclude that no genuine issue of fact remains to be tried and that defendants are entitled to judgment as a matter of law.

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

The foregoing opinion shall constitute findings of fact and conclusions of law as required by Rule 52.

An order may be submitted in conformity with the opinion herein expressed.