Keith ROBERTS et al.,
Plaintiffs-Appellants,

v.

AMERICAN AIRLINES, INC., et al.,
Defendants-Appellees.

Michael WILLIAMS et al.,
Plaintiffs-Appellants,

v.

AMERICAN AIRLINES, INC., et al.,
Defendants-Appellees.

Alan WEIDBERG et al.,
Plaintiffs-Appellants,

v.

AMERICAN AIRLINES, INC., et al.,
Defendants-Appellees.

AIR TRAVELERS ASSOCIATION et
al., Plaintiffs-Appellants,

v.

AIR WEST, INC., et al.,
Defendants-Appellees.

Nos. 74–1108, 74–1146 and 74–1246.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1975.

Decided Dec. 8, 1975.

Certiorari Denied April 26, 1976.
See 96 S.Ct. 1726.

Albert Koretzky, Chicago, Ill., Michael W. Williams, Corpus Christi, Tex., William M. Brinton, San Francisco, Cal., James H. Ryan, Edward A. Berman, Chicago, Ill., for plaintiffs-appellants.

H. Templeton Brown, Chicago, Ill., Noel H. Thompson, Arlington, Va., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

These four appeals, consolidated in this court for hearing and disposition, are brought by some of the plaintiffs following an adverse judgment in the district court.

In August, 1969, twenty of the principal domestic air carriers filed tariffs which increased domestic air passenger fares. On September 12, 1969, the Civil Aeronautics Board (CAB) suspended these tariffs under 49 U.S.C. § 1482(g) (1964), but announced that it would accept, without suspension, tariffs which utilized a proposed fare formula. The carriers then withdrew their suspended tariffs and filed new tariffs in accordance with the Board's proposed fare formula. The carrier-filed tariffs were allowed to stand without suspension or investigation.

Thirty-two interested Congressmen then petitioned for review alleging that the CAB, by excluding the public from *ex parte* meetings with representatives of the air carriers and by holding a *pro forma* public hearing, had unlawfully approved the increased fare structure. In *Moss v. CAB,* 139 U.S.App.D.C. 150, 430 F.2d 891 (1970), *(Moss I),* the Court of Appeals held that the September 12 order was invalid and the tariffs filed by the carriers based thereon were unlawful. Subsequently, a number of class actions were filed on behalf of all or a portion of the passengers on domestic airlines who paid the increased fares, seeking recovery of an amount measured by the alleged illegal increase. The Judicial Panel on Multidistrict Litigation ordered that all of the class actions be transferred to the United States District Court for the Northern District of Illinois for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. *In re Air Fare Litigation,* 322 F.Supp. 1013 (Jud.Pan.Mult.Lit.1971). Following transfer, the defendants moved to stay the proceedings pending completion of a CAB investigation entitled "Reasonableness of Passenger Fares charged by Domestic Trunkline and Local Service Carriers from October 1, 1969, through October 12, 1970." In *Weidberg v. American Airlines, Inc.,* 336 F.Supp. 407 (N.D.Ill. 1972), the court granted the stay motion and ordered that all proceedings in the litigation be held in abeyance until further order. On June 1, 1972, this court denied a petition for mandamus seeking to upset the stay order.

No further action, except routine status reports, took place in the suits for approximately eighteen months following this court's denial of the mandamus

petition. Meanwhile, the CAB completed its investigation of the reasonableness of passenger fares and, on July 11, 1973, issued Order No. 73–7–39. This order denied to air passengers recovery of any part of the unlawful fares on the grounds that the fares in question were not unjust or unreasonable, and, in any case, resulted in no unjust enrichment of the airlines. After the publication of the CAB order, the district court indicated, during the regular status reports, that he was disposed to grant the defendants' motion to dismiss. At a subsequent status call, the district court judge expressed his view that the seven damage actions were moot. The district court judge observed that absolutely nothing was happening in the case and had not for a year, and he suggested that he would dismiss the cases, subject to reinstatement should the District of Columbia Court of Appeals reverse the CAB finding of just and reasonable rates.

On December 20, 1973, the district court, on its own motion, dismissed the seven actions with prejudice and without costs on the ground that the causes were moot. Four of the civil actions which were appealed are encompassed in these consolidated appeals;[1] the named plaintiffs in the other three actions did not seek appellate review. The appellants seek to reverse the judgment of dismissal.

The procedural history of these cases is inextricably related to other administrative and judicial proceedings. On July 16, 1973, Congressman John E. Moss and some twenty-four colleagues petitioned for direct review of CAB Order No. 73–7–39. It was they who had instituted the CAB proceedings which culminated in that order, just as it was they (or a similar group) who secured the Moss I ruling that invalidated the Sep-

tember 12, 1969, order. Keith Roberts, a named plaintiff in one of the district court suits and appellant in No. 74–1108, also filed a petition (No. 73–1790) seeking review of the 1973 order. He had successfully sought to intervene before the CAB in the proceedings which produced the Board's final decision in Order No. 73–7–39, and he was also allowed to intervene in the Moss review petition (No. 73–1772).

At the time of oral argument of the present appeals, there had been no decision in the related review petitions. Subsequent to oral argument, the D. C. Circuit in Moss v. CAB, 521 F.2d 298 (D.C.Cir.1975), (Moss II ), affirmed the challenged order. That court faced the question as to whether there was to be a recovery of any part of the unlawful fares, and it concluded that the decisional principles used by the CAB in denying such relief were determinative and correctly applied. Not only did the court expressly hold that the petitioners (Moss and Roberts) had no right to recover all amounts in excess of the last lawfully established rates, but it also confronted, and rejected, the alternative claim that recovery of an amount measured by the difference between the charged fares and "reasonable" fares was available to the Moss petitioners or to Roberts.

The question originally raised in these consolidated appeals was whether passengers are entitled to recover damages or secure restitution of monies paid under illegal air passenger tariffs which the Civil Aeronautics Board has found not to be unjust or unreasonable. As originally argued, our primary task was to explicate the precise legal meaning of the Moss I holding that the September 12, 1969, CAB order was invalid and that the passenger tariffs were illegal. 430 F.2d at 902. The opposing parties found different meanings in the opinion, and

---

1. No separate docket number has been assigned in the appeal Air Travelers Association, et al., v. Air West, Inc., et al., which was docketed below as C–785. The February 12, 1974, notice of appeal filed in Alan Weidberg, et al., v. American Airlines Inc., et al., Appeal No. 74–1246, clearly stated that Air Travelers Association, et al., was appealing from the January 14, 1974, final judgment in these actions.

they directed argument to the question whether the 1969 order was void or voidable. We think that *Moss II* clearly and correctly explicates the earlier decision and establishes that the CAB order attacked in *Moss I* was voidable rather than void.

Accordingly, we need not undertake a lengthy analysis of the substantive questions of law raised in these appeals. However, *Moss II* does not effectively resolve all of the vexing questions raised here, and we deem it necessary to address ourselves to some of the remaining problems.

### I. Res Judicata and Mootness

#### A. Res Judicata

At the January 14, 1974, hearing on the motion to reconsider the orders of dismissal, the district judge focused directly on the impact on the present cases of an affirmance of CAB Order No. 73–7–39:

THE COURT: * * *

"My logic is, in fact, the dismissal stands because the District Court of Appeals, District of Columbia affirms that the fares were reasonable and fair, that that is res judicata, and it takes care of the issue once and for all, or, at least it is estoppel by judgment if not res judicata. There may be some technical differences between the parties.

\* \* \* \* \* \*

"However, there is no damage because if these improperly adopted fares are subsequently determined to be fair and reasonable, then I don't know what there is left to litigate, except to give it to some law school moot court, or put it on an examination; but, there is nothing more useless than litigating issues from which there can be no recovery in the nature of damages or other relief.

"So, the fact that the FAA [sic] has now found these fares to be reasonable, and that is now on appeal, seems to me means that these cases will all be moot. They are moot *at this point* unless that determination is reversed." (Emphasis added.)

Accordingly, the district court dismissed the cases as moot, with the proviso that it would reinstate the causes should the challenged CAB order later be reversed.

The above quotation from the transcript puts flesh on the bare bones of the formal minute order. The latter statement embodies only a one-sentence formulation, grounding the dismissal on "mootness." Our own reading of the record convinces us that the district court concluded that all of the plaintiffs' claims for restitution were barred by the CAB determination that the air passengers were not injured by paying the fares in question. The lower court relied on the fundamental legal premise that mere illegality which causes no injury is not ordinarily compensable. Thus, the district judge disposed of the cases upon the basis that the CAB finding that the challenged fares were not unjust and unreasonable necessarily implied that the plaintiffs had not been injured and the defendants had not been unjustly enriched.

At the time of the dismissal order, of course, the challenged CAB order was the subject of review proceedings. As we have previously noted, appellant Keith Roberts was a party to the review petitions. Similarly, some fourteen airlines, the defendants-appellees in Appeal No. 74–1108, were allowed to intervene in the review process. Since there is identity of parties and issues, the principles of res judicata and collateral estoppel bar the restitution claims of Roberts.

Under 28 U.S.C. § 2106, this court may affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before it for review. Accordingly, we modify the dismissal order entered in Appeal No. 74–1108 so as to represent a Rule 56(b) summary judgment in favor of the defendants on all counts in the *Roberts* complaint, on the ground that *Moss II* establishes, as a matter of law, that Roberts

has no right to recover from the air carriers. As so modified, the judgment is affirmed.

The other plaintiffs-appellants stand in a somewhat different technical position. The record indicates, and the *Moss II* opinion confirms, that they were not parties to the CAB proceedings which led to Order No. 73–7–39 and that they did not successfully intervene in the review petitions adjudicated in the *Moss II* decision. Accordingly, there is no strict res judicata effect of that decision regarding the claims of Weidberg, Williams, and the Air Travelers Association.

**B. Mootness**

■ In most litigation, the continuing existence of a dispute is not questioned, and the court can readily find that there exists a subject matter on which the court's judgment can operate to make a substantive determination on the merits. See Note, The Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373 (1974). Courts have traditionally declined to hear cases in which neither party stands to gain or lose by a decision on the theory that the state should not be burdened with the expense of trying such controversies. *Id.* at 374. The doctrine that courts will not hear moot cases prevents the useless expenditure of judicial resources. *Id.* at 375–76. Indeed, it has been stated that "[i]n the cases where issues have become moot as a result of judicial decision, or otherwise, the courts unquestionably have the authority, and it often becomes their duty, to dismiss cases *sua sponte* and without any motion to dismiss being made." *Myers v. Polk Miller Products Corp.*, 201 F.2d 373, 376, 40 CCPA 739 (1953).

The transcript of the January 14, 1974, hearing, part of which is set forth above, establishes that the district judge used the word "moot" to mean that the plaintiffs had suffered no injury by paying the fares in question and could not recover any monetary damages. The ambiguous usage of the term resulted in appellate briefs setting forth numerous cases exploring this subtle jurispruden-

tial concept. We need not determine whether the district judge was correct in determining that the causes were moot as of the date of his dismissal order, for the case law establishes an independent and adequate ground for affirmance.

■ In *Schy v. Susquehanna Corp.*, 419 F.2d 1112 (7th Cir. 1970), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 this court had before it a judgment dismissing the complaint with prejudice on the merits where problems of motion practice raised important procedural issues. The *Schy* decision held that a motion to dismiss based upon a lack of damages may properly be treated as a motion to dismiss under rule 12(b)(6). *Id.* at 1115. The court quoted approvingly from *Premier Malt Products Co. v. Kasser*, 23 F.2d 98, 99 (E.D.Pa. 1927), where the court observed:

"There must be both the injuria and the damnum to give a legal cause of action, and this remains true notwithstanding the legal fiction of nominal damages. Indeed, this truth made the legal fiction logically necessary."

Accord, *Citrin v. Greater New York Industries*, 79 F.Supp. 692, 694–95 (S.D.N.Y.1948); *Package Closure Corporation v. Sealright Co.*, 4 F.R.D. 114, 116 (S.D.N.Y. 1943). Moreover, *Schy, supra*, recognized that a motion to dismiss made after the filing of an answer not only served the same function as a motion for judgment on the pleadings and might be regarded as one, *id.* at 1115, but could be treated as a motion for summary judgment under Rule 12(c). *Id.* at 1116.

In this case, the defendant air carriers moved for dismissal on the grounds that plaintiffs had failed to state a claim for which relief could be granted. Moreover, shortly after entry of CAB Order No. 73–7–39, the defendants filed a motion for summary judgment dismissing the consolidated actions on the ground that the CAB decision precluded recovery by the plaintiffs. The air carriers insisted that there was no genuine issue as to any material fact and that they were entitled to the requested summary

judgment of dismissal as a matter of law.[2] The plaintiffs responded to this motion by arguing that the pending appeal in Docket No. 73–1772 (the Moss review petition) made the summary judgment request premature, by adopting all their filed legal memoranda as an answering memorandum, and by citing additional legal authority in opposition to the motion. The plaintiffs placed great reliance on the pendency of the appeal, and they argued that no findings or conclusions in Order No. 73–7–39 could possibly be considered final.[3] Significantly, however, they made no direct argument that there was a genuine issue as to any material fact.

We think that, in substance if not in form, the district court granted the defendants' motion for summary judgment. Under the authority of *Schy*, we treat the challenged dismissal order as a Rule 56(b) summary judgment on all counts in the complaint in favor of the defendants. As so modified, the judgment is affirmed.

## II. Non-Consideration of the Class Action Question

Another major problem still remaining in this appeal stems from the failure of the district court to consider or determine whether the suits should be maintained as a class action. Although inadequate compliance with F.R.Civ.P. 23(c)(1) has emerged in a number of recent appeals taken to this court, see, *e. g.*, *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975); *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975); neither side in the present case has briefed or argued the legal effect of the district court's failure to make the class determination in the instant cases.

■ This court has recently determined that, in an appeal from a decision on the merits made without the prior class determination required by Rule 23(c)(1), the reviewing court will treat the case as one brought by the named plaintiff only and not as a class action. *Case & Co., Inc. v. Board of Trade of City of Chicago*, 523 F.2d 355, 360 (7th Cir. 1975). Accordingly, we treat these cases as brought solely on behalf of the named plaintiffs.

■ Under established principles, the Rule 56(b) summary judgment against the named plaintiffs will not protect the defendant air carriers against other members of the class under the doctrine of res judicata, see *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758–759 (3d Cir. 1974), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125. However, the defendants, by moving for summary

---

**2.** The defendants-appellees relied on the same decisional principles found determinative by the CAB and, later, by the *Moss II* court. We have made an independent analysis of the precedents, and we agree with the *Moss II* decision. The allegations in the various complaints filed by the plaintiffs-appellants differ somewhat in language, but the general thrust of the language aims at a common law declaration for money had and received. We accept as conclusive the CAB finding, now affirmed by the *Moss II* court, that the air carriers were not unjustly enriched by collecting the fares in question. Under these circumstances, *Atlantic Coast Line R.R. v. Florida*, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935), and *United States v. Morgan*, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939), preclude a restitutionary remedy. If *Schy* and its analysis were not proper authority for treating the dismissal order as a grant of summary judgment for the defendants-appellees, we could properly conclude that the Williams,

Weidberg, and Air Travelers Association claims were effectively mooted at least as of the date October 16, 1975.

**3.** While this opinion was in the final stages of preparation, counsel for the appellants brought to our attention that Roberts had filed a petition for rehearing in the D.C. Circuit in *Moss II* with the suggestion that the matter be reheard en banc. From some points of view, of course, the litigation may not be final until either there has been a denial of certiorari or consideration and decision by the Supreme Court following the granting of a petition for certiorari. For that reason we find it necessary to state that a preliminary draft of an opinion had been prepared in the present appeals prior to *Moss II* which reached the same result as did the opinion in that case and for substantially the same reasons. No purpose was seen in preparing the final draft of this opinion for repeating what Judge McGowan stated so effectively in *Moss II*.

judgment prior to the class determination and the sending out of class notice, assumed the risk that a judgment in their favor would not protect them from subsequent suits by other potential class members. See *Haas v. Pittsburgh National Bank*, 381 F.Supp. 801, 806 (W.D. Pa.1974), *rev'd on other grounds*, 526 F.2d 1083 (3d Cir. 1975). Since the defendants sought summary judgment on the ground that the named plaintiffs could not recover monetary damages, they have the not inconsequential protection of stare decisis regarding identical claims of unnamed plaintiffs. See *Katz, supra* at 759; see also *Haas, supra* at 806. Although the air carriers have never expressly stated that they would be content to rest on the protection of stare decisis rather than upon res judicata, we think that the circumstances of this case authorize the court to infer such a concession.

Moreover, our recent decisions leave room for no other approach. In *Peritz*, the district judge severed a central liability issue from the class action determination issue and deferred resolution of the latter until after a jury determined whether the defendant's loan form clearly and conspicuously disclosed that credit life and/or disability insurance was not required for obtaining a loan from Liberty Loan Corporation. After the return of a special verdict establishing liability, the judge determined that a class action could be maintained on the claims remaining in issue. This court ruled that the language of Rule 23(c) clearly *requires* class certification prior to a determination on the merits. (emphasis in original). The court was constrained to hold that certification of the class was delayed beyond the permissible period allowed by the rule.

In *Jimenez*, the trial court certified the case as a class action after a decision on the merits. The real problem lurking in the case was the possibility of one-way intervention whereby a potential plaintiff could await a resolution of the merits before deciding whether or not to join the suit. This court in the recent *Jimenez* opinion indicated that, in some cases, the final certification need not be made *until* the moment the merits are decided. (emphasis in original). Since the class allegations in that case met the requirements of subdivision (b)(2) of Rule 23 rather than subdivision (b)(3), the court thought it fair to infer that the timing of certification in the former kind of class suit could differ from the timing required in the latter. Because the allegations met (b)(2) requirements, the court was able to avoid concluding that non-certification required automatic reversal. Significantly, however, *Jimenez* plainly stated that a reversal would almost certainly have been required in the class action had it been maintained under subdivision (b)(3).

In the instant appeals, the class allegations fell under subdivision (b)(3). Moreover, at least one of the named plaintiffs formally moved for certification of the suit as a class action. We conclude that under the mandatory language of Rule 23(c)(1) and our prior decisions, the district court could not, should we remand the present actions for entry of Rule 56(b) summary judgments, proceed to make a delayed class certification. Thus, there is no way under the federal rules of procedure for the defendant air carriers to secure the protection of res judicata. They must rest content with the stare decisis protection. We cannot countenance a patent violation of Rule 23.

We have examined the other contentions raised by appellants, and we find them meritless. Accordingly, we modify the orders of dismissal, and, treating them as summary judgment that the named, individual plaintiffs are barred from securing restitution from the defendant air carriers, we affirm.

Affirmed as Modified.